# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| LISA JO LEMA, <br><br> Plaintiff, <br><br> vs. <br><br> NANCY A. BERRYHILL,[1] <br> Acting Commissioner of Social Security, <br><br> Defendant. | No. 16-CV-1010-KEM <br><br> **MEMORANDUM OPINION AND ORDER** |

_____

Plaintiff Lisa Jo Lema seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for disability insurance (DI) benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Lema contends that the Administrative Law Judge (ALJ), Barbara J. Welsch, erred in determining Lema's residual functional capacity (RFC), that the ALJ's RFC determination is not supported by substantial evidence, and that the ALJ did not prove other work exists that Lema could perform. For the reasons that follow, I **affirm** the Commissioner's decision.

## *I. BACKGROUND*[2]

Lema suffers from lower back pain, neck pain, some shoulder and leg pain, and migraines. AR 203, 213, 233, 353.[3] On August 10, 2012, she applied for disability

---

[1] Commissioner Berryhill is substituted for her predecessor in accordance with Federal Rule of Civil Procedure 25(d).

[2] For a more thorough overview, see the Joint Statement of Facts (Doc. 16).

[3] "AR" refers to the administrative record below.

benefits with an alleged onset date of June 1, 2012. AR 68-69, 133. Her claim was first denied on October 10, 2012, and upon reconsideration on January 18, 2013. AR 94, 101. Lema requested an administrative hearing on March 20, 2013. AR 107-08. The ALJ conducted a video hearing on Mach 25, 2014, with Lema appearing by video from Davenport, Iowa, and the ALJ appearing in Peoria, Illinois. AR 22, 40. Lema testified at the hearing, along with vocational expert (VE) George B. Paprocki. AR 22, 39. Lema appeared at the hearing without counsel. AR 22, 40-42.

On May 2, 2014, the ALJ issued a written opinion, following the familiar five-step process outlined in the regulations[4] for determining whether Lema was disabled. AR 22-33. The ALJ determined that Lema had the following severe impairments: "spine impairments with back and neck pain and some shoulder and leg pain, and migraines." AR 24. The ALJ also found that Lema suffered from non-severe mental impairments of depression and adjustment disorder. *Id.* The ALJ found Lema had the RFC:

> to perform light (and sedentary) work . . . because of possible pain exacerbation including headaches and possible medication side effects, she should not climb ladders, ropes, or scaffolds or work at unprotected heights; and she should not perform jobs that require over shoulder work.

AR 26.[5] The ALJ then found, based on testimony by the VE, that a significant number of jobs existed in the national economy that Lema could perform, including office helper

---

[4] "The five-part test is whether the claimant is (1) currently employed and (2) severely impaired; (3) whether the impairment is or approximates a listed impairment; (4) whether the claimant can perform past relevant work; and if not, (5) whether the claimant can perform any other kind of work." *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009); *see also* 20 C.F.R. § 404.1520(a)(4). The burden of persuasion always lies with the claimant to prove disability, but during the fifth step, the burden of production shifts to the Commissioner to demonstrate "that the claimant retains the RFC to do other kinds of work[] and . . . that other work exists." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004)).

[5] Light work involves lifting up to twenty pounds, frequently lifting or carrying items weighing up to ten pounds, and frequent walking or standing. 20 C.F.R. § 404.1567(b). Sedentary work, which typically involves more sitting than light work, requires lifting no more than ten pounds;

and photo copy machine operator (both light work), and document preparer and envelope addresser (both sedentary work). AR 32-33. Accordingly, the ALJ found that Lema was not disabled. AR 33.

The Appeals Council denied Lema's request for further review on September 3, 2015 (AR 7-11), making the ALJ's decision that Lema was not disabled the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. The Appeals Council admitted additional information into the record, including statements from Lema, new third party statements, and medical records from May 8, 2014, through June 10, 2014. AR 7, 10. The Appeals Council also granted Lema an extension to seek further review and Lema filed a timely complaint in this court on April 11, 2016. Docs. 1, 3. The parties briefed the issues and with their consent this case was assigned to a United States magistrate judge for final judgment. Doc. 8, 15, 21.

## II. DISCUSSION

A court must affirm the ALJ's decision if it "is supported by substantial evidence in the record as a whole." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Kirby*, 500 F.3d at 707. When determining whether substantial evidence supports the ALJ's decision, the court considers all the evidence before the ALJ but "do[es] not reweigh the evidence or review the factual record de novo." *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994); *accord Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court "must search the record for evidence contradicting the [ALJ's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003). The court must

---

occasionally lifting or carrying items such as files, books, and small tools; and occasional walking and standing. 20 C.F.R. § 404.1567(a).

3

"evaluate in detail the evidence it used in making its decision and how any contradictory evidence balances out." *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987).

If, after reviewing the evidence, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, [the court] must affirm the decision." *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992). In other words, substantial evidence may support the ALJ's decision "even if [the court] might have weighed the evidence differently." *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992). "The concept of substantial evidence . . . embodies a zone of choice within which the [ALJ] may decide to grant or deny benefits without being subject to reversal on appeal." *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988).

Lema argues that the ALJ improperly weighed her subjective complaints and that substantial evidence on the record as a whole does not support the ALJ's RFC determination. Lema also argues the ALJ failed to adequately develop the record regarding the effects of Lema's migraines and the side effects of her medication. Finally, Lema argues the ALJ failed to prove a significant number of jobs exist in the national economy that Lema could perform. I will address these arguments in turn.

### A. The ALJ's RFC Determination

#### 1. Weight Given to Lema's Subjective Complaints

Lema primarily argues the ALJ erred by failing to consider the entire medical record. In making this argument, Lema points to portions of the record she believes support her subjective complaints and argues that under *Cripe v. Apfel*, 21 F. Supp. 2d 944 (N.D. Iowa 1998), the ALJ improperly "cherry-picked" from the record. In *Cripe*, the court found the ALJ erred in rejecting the treating physician's opinion because there were no other medical opinions to support the ALJ's findings, and rather than fully considering the treating physician's records, the ALJ "selectively quoted from [the physician's] treatment notes, isolating any statement that minimized the plaintiff's

4

condition." 21 F. Supp. 2d at 949. This case is distinguishable. Here, the overall record, including multiple treatment notes and medical opinions (as discussed further below), supports the ALJ's findings. Also, the ALJ here considered information in the record that both supported and contradicted Lema's testimony. *See* AR 27-31. In essence, Lema argues the ALJ "should have weighed the[] facts differently or drawn different conclusions," but under the deferential standard of review, this court does not reweigh the evidence presented to the ALJ. *Hensley v. Colvin,* 829 F.3d 926, 934 (8th Cir. 2016). As discussed below, I find the ALJ provided good reasons for the weight given to Lema's subjective complaints and that substantial evidence from the record as a whole supports this finding.

When evaluating a claimant's subjective complaints, including pain, the ALJ must consider the factors set forth in *Polaski v. Heckler*: "(1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions." *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998); *accord Polaski*, 739 F.2d 1320, 1321-22 (8th Cir. 1984), *vacated*, 476 U.S. 1167 (1986), *reinstated*, 804 F.2d 456 (8th Cir. 1986).[6] "Other relevant factors include the claimant's relevant work history and the absence of objective medical evidence to support the complaints." *Black*, 143 F.3d at 386.

In this case, while the ALJ found that Lema's "impairments could reasonably be expected to cause some symptoms," the ALJ did not fully credit Lema's statements about the intensity, persistence, and limiting effects of her symptoms. AR 27. The ALJ made this finding based on inconsistencies with the medical reports and treatment records. AR 27-31. An ALJ may reject a claimant's subjective complaints based on "objective medical evidence to the contrary," *Ramirez v. Barnhart*, 292 F.3d 576, 581 (8th Cir.

---

[6] The court did not explicitly say that it was reinstating the original *Polaski* opinion, but the Eighth Circuit has recognized that it "effectively reinstat[ed]" *Polaski*. *Jones v. Callahan*, 122 F.3d 1148, 1151 n.3 (8th Cir. 1997).

2002); or "inconsistencies in the record as a whole," *Brockman v. Sullivan*, 987 F.2d 1344, 1346 (8th Cir. 1993). Lema specifically argues the ALJ erred by not crediting her testimony that she cannot sit for any period of time or lift and carry much weight.

Lema has experienced back pain for at least twenty years, neck pain since around 2009, and headaches for many years predating her neck pain. AR 353. Lema claims she has not been able to sit for any length of time in over twenty years and reports suffering from pain since she was nineteen years old. AR 274, 308. Lema indicates she can walk, talk, see, hear, and get along with others without any issues. AR 208. She reports being limited, however, in her other physical and mental abilities, including lifting, squatting, bending, standing, reaching, sitting, kneeling, climbing stairs, memory, completing tasks, concentration, understanding, following instructions, and using her hands. AR 208. Lema said sitting "for any length of time" causes "a lot of pain" in her lower back, legs, and buttocks. AR 203; *see also* AR 55, 233. She also said lifting "anything" causes pain in her neck and lower back and that she "can't carry anything." AR 203-04, 233. Lema reported during a consultative examination in September 2012 that she could not lift heavy pots, pans, or bakeware and that she had been restricted[7] in lifting (not even a gallon of milk). AR 434, 436. Third-party statements indicate Lema has suffered from neck and back pain for years and echoed Lema's reported issues with sitting and movement. AR 223, 314-19.

Despite these reported limitations, Lema is able to care for her personal hygiene, do light housework, take her dog for walks, go for walks outside a few times a week when the weather is nice, do stretches and exercises, prepare mostly microwave meals, and go shopping two to three times a week for an hour or so at a time. AR 55, 58, 204-06. Lema's daughter, who was twelve years old at the time of the hearing (AR 44), helps

---

[7] The only lifting restriction I found in the record was to "avoid weight lifting or weight bearing activities" in July 2013, which resulted from Lema falling and injuring her hand and elbow (and was not due to her neck and back issues). AR 537-38. A disability examiner found in July 2013 that Lema should not perform heavy labor. AR 551, 562. The ALJ's RFC determination, however, comports with that finding because the ALJ limited Lema to light work.

with the housework and carries items for Lema; Lema's mother helps her as well. AR 204. Providers recommended in May 2012 that Lema do yoga "rather than the high intensity workouts she was doing" (AR 363), suggested in October 2012 that she "increase daily physical activity" (AR 471), and "strongly encouraged" Lema in February 2014 to be as active as possible (AR 521). Despite her limitations, Lema is able to do some exercises. AR 204, 478. The ALJ did consider Lema's daily activities (AR 27), and although they were not cited as a reason for the weight given to her subjective complaints, they do provide some support for the ALJ's determination.

The ALJ found the medical evidence contradicted Lema's complaints of extreme limitations caused by sitting and lifting. AR 29-30. As noted by the ALJ, the records show that during a majority of physical examinations, Lema had few or no issues with range of motion, gait, and strength. AR 340, 356, 378, 470, 480, 488, 602. Treatment records also show that Lema rarely indicated that sitting increased her pain (AR 353, 391, 478, 486-87), although she reported, during a neurology consultation in June 2014, that sitting, bending, twisting, and sharp or "wrong" movements caused sharp pain (AR 601). She reported during a September 2012 consultative examination that her neck and back pain were "manageable" when she limited lifting and her activity level. AR 437. While she points to the notation that she engaged in "[a] moderate amount of in-seat fidgeting" during that examination, the examiner also noted Lema did not appear to be in discomfort during this movement, had no difficultly bending over to pick up her purse, and "did not seem to have any stiffness or movement difficulties after being seated for over an hour." AR 435; *see also* AR 438 (observing no "significant difficulties relative to movement or walking"). Similarly, treatment records lack reports by Lema that lifting increased her pain, although she noted in September 2012 that she "avoids lifting or carrying anything heavy." AR 478.

The ALJ also discussed how imaging studies provided "no evidence of any nerve root compression" and did not support Lema's alleged limitations. AR 30. Cervical magnetic resonance imaging (MRI) imaging from December 2011 showed moderate to

severe canal and neuroforaminal narrowing but overall, showed no abnormal cord signal. AR 443-45. Spinal MRI results from April 2012 showed mild stenosis and mild to severe neuroforaminal narrowing with an overall impression of grade 1 retrolisthesis. AR 442-43. Results from an April 2014 MRI revealed "perhaps slight interval worsening of L4-L5" and definite interval worsening at L5-S1 (now moderate to severe), although the overall impression showed mild stenosis and "[n]o evidence of spondylolysis." AR 581-82. The most recent MRI, from August 2014, showed definite interval worsening ("now moderately severe to severe") at the L5-S1 vertebrae, but otherwise noted only "slight" interval worsening and showed "[n]o evidence of spondylolysis." AR 596-97. Records from February 2014 show Lema had a diagnosis of "lumbosacral spondylosis without myelopathy," which is consistent with the MRI impressions. AR 513-14. Although the imaging results support a finding that Lema experienced back pain, they also provide support for the ALJ's decision to not fully credit Lema's claims of extreme limitations in her abilities to sit and lift items.

The ALJ also considered the "essentially routine and conservative" nature of Lema's treatment. AR 30. This description of Lema's treatment is consistent with the medical record. *See* AR 601. To help treat her pain, Lema regularly uses ice packs and takes hot baths. AR 204. She takes prescription medications (including Vicodin) and uses a transcutaneous electrical nerve stimulation (TENS) unit, as well as cervical traction to help with her neck pain. AR 209-10, 391, 393, 400-01, 410. Lema has also participated in physical therapy, acupuncture, and received pain injections. AR 204, 362, 368, 410-11, 494, 572. The conservative nature of a claimant's treatment (such as physical therapy, medication, and heat and sound treatments) may be an appropriate factor, among others, for the ALJ to consider in weighing the claimant's subjective complaints. *See Robinson*, 956 F.2d at 840.

The ALJ noted that these treatment methods provided Lema at least some relief from her pain. AR 30. She reported that using ice packs helps her pain "a lot" and that medications also helped but cause some drowsiness, dry mouth, and make her sick to her

stomach. AR 210, 234, 338. Although her physical therapist noted in March 2012 that Lema had "classic signs of cervical radiculopathy exacerbated by prolonged sitting" (AR 368), records show physical therapy helped her neck and back pain. AR 338, 376, 394. Pain injections also provided at least "some" or temporary pain relief. AR 362, 461, 464, 467, 601. Lema reported "good benefit" with acupuncture in December 2012 (AR 494) and in February 2014, described it as "definitely helpful," stating she would like to have acupuncture ordered again. AR 494, 521. She also noted she no longer followed up with the pain clinic and her pain was stable with her current medication. AR 523. The ALJ may consider a claimant's improvement with treatment in determining the weight to give to a claimant's subjective complaints. *Rahe v. Astrue*, 840 F. Supp. 2d 1119, 1136-37 (N.D. Iowa 2011) (collecting cases); *see also Robinson*, 956 F.2d at 840 (finding conservative treatment that "somewhat" relieved pain with minimal symptoms contradicted claims of disabling pain).

The ALJ also commented that Lema declined multiple recommendations of surgery and additional injections to ease her pain. AR 27, 30. Lema showed no interest in surgery recommended by her providers, including the recommendation by a neurosurgeon that it could help alleviate sharp pain (even though it would not eliminate all pain). AR 362, 464-65, 478, 601-02. A claimant's refusal to undergo surgery to help relieve pain may help support a finding that the claimant is not totally disabled. *See Ostronski v. Charter*, 94 F.3d 413, 419 (8th Cir. 1996) (noting claimant's refusal to undergo surgery to help relieve pain was inconsistent with her complaints of disabling pain). Also, although pain injections had provided relief, Lema at times declined additional injections. AR 345, 362, 464-65, 467, 484. She cancelled three appointments and failed to show for a fourth appointment for pain-relief injections between January 2013 and March 2013. AR 571. She also refused referrals to a pain psychologist. AR 362-63, 461, 464. There was also a delay between a recommendation for physical therapy (in December 2011) and when Lema began attending (in March 2012), during which time she did not follow up with her doctor. AR 375-76. In March 2012, Lema

declined a recommendation to consult with neurosurgery. AR 378. A subsequent treatment note commented that the longer she waited to consult with neurosurgery, the "more difficult it may be to see if surgical intervention would help." AR 467. The ALJ could consider Lema's failure to follow treatment recommendations in deciding what weight to give her subjective complaints. *See Gowell v. Apfel*, 242 F.3d 793, 797 (8th Cir. 2001).

Other evidence in the record also contradicts Lema's subjective complaints. Lema's own statements are at odds with her assertions of pain caused by sitting. In May 2012, she reported her pain increased "with bending and carrying things." AR 353. During a July 2013 consultative examination, Lema said "overuse, not lifting carefully," and occasionally her sleep position increased her back and neck pain. AR 542, 553. On neither occasion did she indicate that sitting affected her pain. AR 353, 542, 553. Similarly, some statements by her mother, Kathy Taylor, contradict Lema's claims. While Lema reported pain and numbness caused some issues with her abilities to dress, do her hair, and get on and off the toilet (AR 204, 235), Taylor stated Lema had no issues with self-care (AR 224). Taylor indicated that Lema had issues walking (AR 228), while Lema reported no such issues and indicated she regularly goes for walks outside (AR 58, 208). An ALJ may discredit a claimant's subjective complaints when the claimant makes inconsistent statements about pain. *See Gowell*, 242 F.3d at 796-97.

The ALJ also outlined Lema's behavior regarding the use of methadone and Vicodin. AR 27-28, 30. Lema requested a prescription for methadone from her providers on multiple occasions, and her requests were all denied. AR 53-54, 345, 460-61, 463, 467. 494, 496. In March 2012, Lema requested a pain clinic referral because "lots of other people [had told her] that there are meds she could be taking like methadone for long term pain management." AR 376. In July 2012, she again requested methadone and her provider told her, in declining her request, that research showed a lack of benefits and also risks associated with such use. AR 345. In refusing her November 2012 request, Lema's primary care physician explained methadone would not be considered until Lema

had seen a neurosurgeon. AR 463. Later, in January 2013, Lema tested positive for methadone and admitted using another person's prescription. AR 496. She also became "extremely upset" when told she would be tapered off her Vicodin[8] prescription. AR 350. "A claimant's misuse of medications is a valid factor in an ALJ's" consideration of the claimant's subjective statements. *Anderson v. Barnhart*, 344 F.3d 809, 815 (8th Cir. 2003) (involving "possible overuse of narcotic pain medications" (citing *Anderson v. Shalala*, 51 F.3d 777, 780 (8th Cir. 1995) (finding drug-seeking behavior may cast doubt on "allegations of disabling pain"))).

Finally, the ALJ noted (although she did not further discuss) that Lema received unemployment benefits following her most recent prior employment. AR 27, 47-48. Although acceptance of unemployment benefits, "which entails an assertion of the ability to work," on its own is not enough to discount a claimant's subjective complaints, it may support such a finding when combined with other evidence in the record. *See Cox v. Apfel*, 160 F.3d 1203, 1208 (8th Cir. 1998).

Although the ALJ did not fully credit Lema's subjective complaints, it appears she gave them at least partial consideration because her RFC determination limits Lema to light work. AR 26. There is no doubt that Lema suffers from pain. *See* AR 368, 550, 556. Pain or discomfort, however, do not equal disability, and the ALJ could only find Lema was disabled if her pain was so severe that it prevented her from working. *See Perkins v. Astrue*, 648 F.3d 892, 900-01 (8th Cir. 2011). In this case, the ALJ considered the applicable factors[9] and provided specific reasons for the weight given to Lema's

---

[8] It should be noted that her use of Vicodin at that time (May 2012) appeared to be sporadic and was therefore not deemed problematic. AR 351. Earlier, in March 2012, however, her provider had requested that she complete a drug screen after she called asking for different medication because she was in so much pain. AR 372-74. The provider instructed Lema to go to an emergency room if her pain was that severe (AR 373-74), although there is no indication she did so.

[9] For example, the record shows the ALJ made significant inquiries into Lema's past work during the administrative hearing, although the ALJ only mentioned Lema's most recent work (lasting

statements regarding the intensity, persistence, and limiting effects of her pain. If an ALJ does not fully credit a claimant's subjective complaints "and explicitly gives good reasons for so doing, [the court is] bound by that judgment unless it is not supported by substantial evidence on the record as a whole." *Robinson*, 956 F.2d at 841. I cannot say, especially in light of the deferential standard of review, that the weight given by the ALJ to Lema's subjective complaints is not supported by substantial evidence on the record as a whole.

### 2. Determination of Limitations from Migraines and Side Effects of Medication

Lema also argues the ALJ failed to adequately develop the record in determining the functional limitations caused by Lema's migraines and the side effects of her medication. An ALJ must develop the record sufficiently to be able to determine the impact of a claimant's condition and her ability to work. *See Cox*, 160 F.3d at 1210 (finding the ALJ did not properly develop the record where the evidence clearly lacked relevant medical records); *see also Reeder v. Apfel*, 214 F.3d 984, 988 (8th Cir. 2000) (remanding to further develop the record where the ALJ explicitly failed to address combined effect of impairments and ignored medical evidence of impairments). A claimant bears the burden of persuasion to prove disability and to demonstrate her RFC. *Hensley*, 829 F.3d at 932. Even in light of this burden on the claimant, an ALJ must fairly and fully develop the record. *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004). A claimant "bears a heavy burden in showing the record has been inadequately developed." *Combs v. Astrue*, 243 F. App'x 200, 204 (8th Cir. 2007). Even when an ALJ fails to adequately develop the record, remand is only required when the failure

---

a few months) in the written opinion. AR 27, 46-51. An ALJ is "not required to discuss methodically each *Polaski* consideration, so long as he acknowledge[s] and examine[s] those considerations before discounting [the claimant's] subjective complaints." *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000).

prejudiced the claimant by possibly affecting the outcome of the disability determination. *Snead*, 360 F.3d at 839. A claimant "must show both a failure to develop necessary evidence and unfairness or prejudice from that failure." *Combs*, 243 F. App'x at 204 (citing *Haley v. Massanari*, 258 F.3d 742, 749-750 (8th Cir. 2001)). In this case, I believe the record contains sufficient information about the effect of Lema's migraines and medication side effects on her ability to work to allow the ALJ to determine Lema's RFC.

Lema completed a migraine headache questionnaire, in which she reported having migraines, on average, once per month to "maybe" twice per month. AR 236-37. She stated her migraines could last from one to four days at a time, but that on average, they lasted one to two days. AR 236. She reported prescription medication provided some relief, although not completely ridding her of migraines. AR 237. She also reported she had not had to seek regular treatment for migraines, either from her doctor or an emergency room, since she had been taking prescription medication. AR 237.

Treatment notes reflect that Lema has suffered from headaches "for many years, prior to neck pain." AR 353. She reported increases in headaches in March 2012 (increased frequency "due to increased neck pain") and again in September 2012 (her "occasional headaches" were "much worse lately"). AR 376, 478. Lema also recounted improvement with her migraines: in May 2012, she described them as "better than they used to be" (referring to having headaches for many years); and in December 2012, she said acupuncture helped decrease the frequency and intensity of her headaches. AR 353, 486. In February 2014, treatment notes reflect that she was prescribed sumatriptan and that her migraines were stable. AR 523. In March 2014, she reported monthly migraines but again gave no indication that they limited her abilities to function. AR 504-05.

In her August 2012 function report, Lema only mentioned limitations caused by pain, and not by her migraines. AR 203, 208, 210. She made a similar report in her work-history report the same month, as well as in statements from November 2012 and June 2014. AR 248, 251, 257-58, 321-27. The third-party reports also make no mention

of limitations caused by Lema's migraines, and only one mentions issues with concentration as a side effect of Lema's medication. AR 223, 228-30, 314-19. The ALJ asked Lema during the administrative hearing about "what kind of problems [she had] that would keep [her] from working." AR 52. Lema's response revolved around her neck and back pain; she said nothing about limitations or issued caused by her migraines. AR 52-53.

As for medication side effects, Lema reported in both her function report and pain/fatigue questionnaire that her medications caused drowsiness, but she did not indicate they affected her ability to pay attention. AR 210, 234. Treatment notes show she experienced drowsiness while taking gabapentin[10] and topiramate, but these medications were discontinued. AR 338, 345, 486. Lema also reported on her pain/fatigue questionnaire that she experienced some forgetfulness, but this was attributed to pain and fatigue rather than a medication side effect. AR 235. The medical records do not show that she complained of forgetfulness to her treatment providers. At the administrative hearing, the ALJ asked Lema "what kind of side effects" she had from her medications, and she indicated drowsiness and forgetfulness. AR 51. In connection with the VE's testimony, however, Lema reasserted limitations she experienced, which focused on being unable to sit and problems with tendinitis; she made no mention of limitations caused by her migraines or side effects of medication. AR 62, 65.

The ALJ also considered the effects Lema's migraines and medication side effects had on her ability to work. AR 26-28, 30. The record shows that although Lema suffers from migraines, they are improved with acupuncture and medication. The record as a whole also shows that Lema's migraines do not limit (and did not previously limit) her ability to work. Furthermore, the ALJ included RFC limitations that are supported by

---

[10] This medication appears to have been prescribed to address Lema's pain rather than her migraines. AR 350, 362, 494.

the record and account for both Lema's migraines, as well as drowsiness caused by her medications.

The ALJ possessed sufficient information from various sources to assess any limitations caused by Lema's migraines and medication side effects on her ability to work. *See Haley*, 258 F.3d at 749 (finding "sufficient evidence in the record to allow the ALJ to make an informed decision"). The ALJ did in fact consider such limitations and specifically took them into account in the RFC determination. AR 26-28, 30. Furthermore, Lema has failed to show that even if the ALJ had not adequately developed the record that such failure resulted in unfairness or prejudice. *Id.* (finding the claimant made no showing of unfairness or prejudice to warrant reversal). Accordingly, I find the ALJ did not err in developing the record. I further find that substantial evidence in the record as a whole supports the ALJ's RFC determination.

### B. Finding Lema Could Perform Other Work Existing in Significant Numbers

Lema argues the ALJ failed to sustain her burden of establishing that Lema has the RFC to perform other kinds of work that exist in significant numbers in the national economy. This assertion rests on Lema's prior argument that the ALJ failed to properly develop the record about limitations from Lema's migraines and the side effects of her medications.

In order to constitute substantial evidence to support the ALJ's determination, a VE's testimony must be based on a hypothetical question that "captures the 'concrete consequences'" of the claimant's limitations. *See Scott v. Berryhill*, 855 F.3d 853, 857 (8th Cir. 2017) (quoting *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006)). "A hypothetical question posed to the [VE] is sufficient if it sets forth impairments supported by substantial evidence in the record and accepted as true [by the ALJ]." *Goff v. Barnhart*, 421 F.3d 785, 794 (8th Cir. 2005) (quoting *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001)). Put another way, the hypothetical need not include "any alleged

impairments that [the ALJ] has properly rejected as untrue or unsubstantiated." *Perkins*, 648 F.3d 902 (quoting *Hunt*, 250 F.3d at 625)).

Here, the ALJ asked the VE to consider a person with Lema's age, education, and past work experience, and the following RFC:

> can perform light and sedentary work with the following exceptions[:] be limited to jobs . . . with no climbing of ladders, ropes, scaffolds; work at unprotected heights; [or] require over shoulder work.

AR 61-62. This hypothetical mirrors the RFC determination made by the ALJ (AR 26), which I have found was supported by substantial evidence from a sufficient record. The VE testified that under that hypothetical, there would be a significant number of jobs in the national economy a person could perform, including an officer helper or photocopy machine operator (both light work), as well as a document preparer and envelope addresser (both sedentary work). AR 61-64. The ALJ clarified that the hypothetical RFC would require occasional standing, walking and sitting, and the VE confirmed these jobs would still meet that hypothetical. AR 64-65. Accordingly, substantial evidence supports the ALJ's finding that additional work existed that Lema could perform.

## III. CONCLUSION

I find that the ALJ's RFC determination is supported by substantial evidence and that the ALJ did not err in weighing Lema's subjective statements nor in developing the record regarding Lema's migraines and medication side effects. I further find substantial evidence supports the ALJ's finding that Lema could perform other work existing in significant numbers in the national economy. For these reasons, I **affirm** the decision of the Commissioner.

Dated this 7th day of December, 2017.

Kelly K.E. Mahoney
United States Magistrate Judge
Northern District of Iowa